UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
CARMEN O'MALLEY,                                                    Civil Action No.: 2:21-cv-754

                                        Plaintiff,

                    -against-                                        **COMPLAINT**

THE GEO GROUP, INC., GEO TRANSPORT, INC. a/k/a
GEO TRANSPORT SERVICES OF NEW YORK,                                 **JURY TRIAL REQUESTED**
WILLIAM ZERILLO, individually, and RALPH
BURNSIDE, individually,

                                        Defendants.
-------------------------------------------------------------------------X

      Plaintiff, CARMEN O'MALLEY ("Plaintiff"), by her attorneys, Campolo Middleton &

McCormick, LLP, as and for her Complaint against Defendants, THE GEO GROUP, INC., GEO

TRANSPORT, INC. a/k/a GEO TRANSPORT SERVICES OF NEW YORK, WILLIAM

ZERILLO, individually, and RALPH BURNSIDE, individually   (collectively "Defendants"),

alleges as follows:

### PRELIMINARY STATEMENT

      1.     This is an action for disability discrimination and retaliation by Plaintiff against

Defendants, her former employers.

      2.     Plaintiff worked for Defendants for nearly ten years as a transportation officer.  In

February 2018, Defendants took the liberty to inspect Plaintiff's personal vehicle, where they

noticed she had a handicap tag inside her personal vehicle.  Plaintiff had the handicap tag in her

personal vehicle the entire time she was employed by Defendants, as she was permitted to obtain

the tag due to her congestive heart disease/failure.  Defendants had a record of Plaintiff's

congestive heart disease/failure based on exam results it received from doctors who treated

Plaintiff.

[3723-001/3460313]

3.      Upon discovering the handicap tag in the vehicle, Defendants sent Plaintiff to multiple doctors selected by them to undergo examinations to see if she could perform the functions of her job with or without a reasonable accommodation.  This was in spite of the fact that Plaintiff had already been performing the essential functions of her job without issue since her hire by Defendants (and even before that) for nearly ten years.  Moreover, Plaintiff had already passed an examination from the Department of Transportation on February 5, 2018, the results of which found her fit for duty and were provided to Defendants.

4.      Nevertheless, in order to keep her job, Plaintiff visited the additional doctors selected by Defendants.  The doctors all found that Plaintiff was fit to perform the functions of her job according to her job description.

5.      Despite doing all that Defendants required of her declaring her fit for duty, Plaintiff was not allowed to return to work.  Instead, Defendants said that they needed to engage in some sort of interactive process with her, which was not required given that Plaintiff had already been deemed fit for duty without an accommodation.

6.      When Plaintiff protested the continued requests for additional information in order to return to her position because the doctors had already provided Defendants with such information, she was terminated from her employment on June 20, 2018.

## JURISDICTION AND VENUE

7.      The claims in this action arise under the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* (the "ADA"), New York State Human Rights Law, N.Y. Exec. Law §§290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, N.Y.C. Admin. Code §§8-10 *et seq.* ("NYCHRL").

8.      Jurisdiction of this Court is founded on the above federal statutes and 28 U.S.C.

2

§§1331 and 1343.

9.     The claims asserted under the NYSHRL and NYCHRL arise from the same facts and circumstances as the claims arising under federal law and are within this Court's supplemental jurisdiction under 28 U.S.C. §1367(a).

10.     Venue is appropriate in this Court under 28 U.S.C. §1391(b) as the acts or events giving rise to the claims occurred within Eastern District.

## PROCEDURAL HISTORY

11.     On March 22, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging disability and age discrimination, as well as retaliation in violation of the ADA and Age Discrimination in Employment Act.

12.      By letter dated July 23, 2019, the New York State Division of Human Rights ("NYSDHR") issued a letter advising that the matter was being transferred from the EEOC to the NYSDHR for further processing.

13.     On or about January 16, 2020, the NYSDHR issued its Determination After Investigation, along with its Final Report and Basis of Determination, finding that "PROBABLE CAUSE exists to believe that the Respondent has engaged in or is engaging in the unlawful discriminatory practice complained of."

14.     More specifically, the NYSDHR found that:

> The records supports a reasonable belief that [Plaintiff] was terminated from employment because of a perceived disability.  The records indicates that complainant complied with respondent's requests including attending scheduled medical examination appointments made by respondent.   The record shows that complainant was certified by a doctor chosen by respondent, to be "medically stable" and fit to perform the duties listed in the job description, but respondent refused to allow her to return to work, because she has a handicap tag on her personal vehicle

3

15.     On or about December 22, 2020, the NYSDHR issued a Final Order and Notice dismissing the complaint on the grounds of administrative convenience.

16.     On or about January 4, 2021, the EEOC issued a Notice of Right to Sue to Plaintiff. *A copy of the Notice of Right to Sue is annexed hereto as Exhibit "1."*

## PARTIES

17.     Plaintiff is an individual who currently resides in the County of Queens, State of New York.

18.     Upon information and belief, Defendant The Geo Group, Inc. ("Geo Group"), at all times hereinafter mentioned, was and is a foreign corporation authorized to do business in the State of New York.

19.     Upon information and belief, Defendant Geo Transport, Inc. a/k/a Geo Transport Services of New York ("Geo Transport"), at all times hereinafter mentioned, was and is a foreign corporation authorized to do business in the State of New York.

20.     Plaintiff received correspondence and other documents from the Geo Group during the course of her employment.

21.     Plaintiff's paychecks were issued by Geo Transport.

22.     On the New York State Department of State, Division of Corporations' website, both Geo Group and Geo Transport are listed as having the same Chief Executive Officer – George Zoley – and the same Principal Executive Office – 4955 Technology Way, Boca Raton, Florida.

23.     Upon information and belief, Geo Group and Geo Transport, have interrelated operations, common ownership and financial control, common management and centralized labor relations and personnel to be deemed a single employer of Plaintiff.

4

24.     Alternatively, Geo Group and Geo Transport are joint employers of Plaintiff as Geo Transport exercises a measure of control over the hiring, firing, supervision, leave, and discipline of Geo Group's employees.

25.     Geo Group and Geo Transport (collectively referred to hereinafter as "Geo") are each an "employer" and/or "covered entity" as defined by the ADA, NYSHRL and NYCHRL.

26.     Upon information and belief, Defendant William Zerillo ("Zerillo") is the Warden of the Geo Group's Queens Detention Facility.

27.     Upon information and belief, Defendant Ralph Burnside ("Burnside") is a Program Manager at Geo Group.

28.     At all relevant times during her employment, Plaintiff was supervised by Zerillo and Burnside (the "Individual Defendants").

## FACTUAL ALLEGATIONS

29.     From 2009 until her unlawful termination on June 20, 2018, Plaintiff was employed by Geo as a Transportation Officer.

30.     Prior to working for Geo, Plaintiff worked in the same position for Geo's predecessor, MVM, Inc., before it lost its contract with the U.S. Marshal to Geo.

31.     Geo contracts with the U.S Marshal to provide certain services, such as, in relevant part, detainee transportation services to federal, state and local government agencies.

32.     Both before and during her employment with Geo, Plaintiff suffered from a congestive heart disease/failure.

33.     Upon being hired by Geo, Plaintiff and other transportation officers were required to obtain Commercial Drivers Licenses ("CDL") in order to continue working for the company.

5

34.     Because she was required to obtain a CDL, Plaintiff was required to undergo annual testing from the Department of Transportation ("DOT") to confirm whether or not she was fit for duty.

35.     At all times during her employment, Plaintiff exceeded all the expectations placed on her by Geo, not once receiving a negative performance rating.

36.     In 2012, Plaintiff was awarded the Employee of the Month based on the professionalism, teamwork and work ethic she exhibited at Geo.

37.     For a majority of her time with Geo, Plaintiff worked as a Transportation Officer, the same role she had been performing since 2002 while working for MVM.

38.     In her role as a Transportation Officer, Plaintiff's duties consisted of, among other things: (a) transporting prisoners to courts, hospitals and doctor's appointments; (b) traveling upstate to transfer prisoners to a jail closer to the courthouse where the prisoner was to be tried; and (c) conducting perimeter patrol around the jailhouse located at 182-22 150th Avenue in Jamaica, Queens.

39.     At all times while performing her duties as Transportation Officer, Plaintiff was accompanied by a male Transportation Officer.

40.     In or about 2012, Plaintiff was transferred to an office position within Geo, where she was responsible for overseeing compliance.

41.     In this role, Plaintiff was responsible for, among other things: (a) checking the logs submitted by transportation officers; (b) reconciling daily logs between an officer and his/her partner; (c) ensuring that drivers' licenses were up to date; (d) conducting training for officers to properly fill out paperwork; and (e) teaching officers how to drive Geo's vehicles (Plaintiff was sent to Georgia to take a course on this training).

6

42.     Plaintiff remained in this role until 2017.

43.     In or about September 2017, Burnside told Plaintiff that she was no longer needed in the office.

44.     No reason was provided by Burnside for this decision.

45.     This took Plaintiff completely by surprise given that she had become the "go-to" person for almost everything needed in the office.

46.     Nevertheless, Plaintiff accepted Geo's decision and resumed her role as a Transportation Officer from September 2017 until February 2018.

47.     On February 20, 2018, Plaintiff worked a regular day in the field.

48.     The following day, Burnside called Plaintiff and directed her to come to the office to see him.

49.     On that day, Burnside mentioned that he noticed that Plaintiff had a handicap tag in her personal vehicle.

50.     Notably, this was the same vehicle Plaintiff had been driving with a handicap tag for the entirety of her employment with Geo.

51.     On February 22, 2018, Plaintiff went to Geo's office with a Union representative to speak with Burnside.

52.     When Burnside saw that Plaintiff had a Union representative with her, he immediately summoned Zerillo to come to the meeting.

53.     During the meeting that day, Burnside presented Plaintiff with an email dated February 20, 2018.

54.     In the email, Burnside wrote how he took the time to closely examine Plaintiff's personal vehicle to find the handicap tag hanging from her rearview mirror.

7

55.     Burnside then stated in the email that he needed certain questions answered, which were then listed in the email.

56.     Zerillo stated that he would have to "call corporate" to see how to handle the handicap tag.

57.     When Plaintiff asked why this was required on her handicap tag now, when no such dialogue occurred before she was transferred from the office back into the field, Zerillo had no response.

58.     At all times during her employment with Geo, Plaintiff was able to perform the duties set forth in her job description.

59.     Upon information and belief, Geo has records regarding Plaintiff's disability as Geo received test results back from the DOT and other doctors indicating same throughout the course of Plaintiff's employment.

60.     The DOT examination conducted on or about February 1, 2018 (the "February Examination") listed "congestive heart failure" under the Driver's Health History.

61.     The doctor who conducted the February Examination concluded that Plaintiff was qualified despite her disability, i.e. she passed the DOT examination.

62.     Upon information and belief, Geo received the results of the February Examination shortly after it was conducted, which indicated her disability.

63.     On or about February 23, 2018, after Geo already had received the February Examination results that indicated Plaintiff's disability, Ramona Perry-Jones in Geo's Human Resources sent Plaintiff a letter (the "February Letter").

64.     In the February Letter, Ms. Perry-Jones acknowledged that Plaintiff had not sought a reasonable accommodation before Burnside singled her out by taking the time to personally inspect Plaintiff's vehicle to discover the handicap tag.

65.     The February Letter further acknowledged that a reasonable accommodation may not be necessary for Plaintiff to perform her duties.

66.     In February Letter, Ms. Perry-Jones stated that she wanted Plaintiff's "relevant medical and any other information from you and/or your doctor by March 1, 2018," and that upon receipt of such information, Ms. Perry-Jones would "further evaluate the data and get back to you regarding whether any next steps are needed or appropriate."

67.     In the February Letter, Geo also stated that it would be scheduling Plaintiff for a medical examination to determine whether she could perform the functions of her job, with or without an accommodation.

68.     This additional medical examination was being required of Plaintiff despite the facts that she: (a) had been performing the same job for Geo when it took over in 2009 (and before that since 2002 with Geo's predecessor); and (b) already passed an examination with the DOT on February 1, 2018.

69.     The same day, February 23, 2018, Plaintiff received a memorandum from Geo scheduling her for a medical examination on March 1, 2018.

70.     The medical examination on March 1, 2018 was to be conducted by a doctor of Geo's own choosing, Dr. Lucia Scarascia.

71.     When Plaintiff abided by Geo's request and went to see Dr. Scarascia on March 1, 2018, he would not examine Plaintiff because the DOT had already found her fit to perform the duties of her job.

9

72.     By letter dated March 1, 2018, Dr. Scarascia advised Geo that Plaintiff attended her scheduled examination but that he did not evaluate her that day.

73.     By this time: (a) Geo already had Plaintiff's DOT examination results, finding her qualified to perform her job duties; and (b) Geo's own doctor would not examine Plaintiff on March 1, 2018 because she already had DOT clearance.

74.     Nevertheless, Geo still insisted that Plaintiff see yet another doctor of Geo's own choosing for more testing.

75.     Given Plaintiff's commitment to the job and need for continued income, she abided by Geo's directives.

76.     On March 6, 2018, Plaintiff went for another examination by the second doctor chosen by Geo, Dr. Samuel Okonta.

77.     Demonstrating an even further ignorance of the law and her privacy rights, this time, Plaintiff was accompanied by Ms. Perry-Jones to the doctor.

78.     At the examination on March 6, 2018, Ms. Perry-Jones provided Dr. Okonta with Plaintiff's job description for him to review prior to examining Plaintiff.

79.     Dr. Okonta also provided Ms. Perry-Jones with Plaintiff's medical records in his possession, which, upon information and belief, included information confirming that Plaintiff suffered from congestive heart disease/failure.

80.     As with her other examinations, Plaintiff passed the examination by Dr. Okonta who deemed her "fit to perform the duties of the position listed above."

81.     Since Plaintiff did everything requested of her by Geo and was deemed fit to perform the duties of her job by Geo's doctors, Plaintiff requested that Geo assist her in returning back to work as soon as possible.

82.     Instead, unsatisfied with Dr. Okonta's response, by letter dated March 13, 2018, Geo wrote to Dr. Okonta seeking further information (the "March Letter").

83.     In the March Letter, Geo stated that "[i]n light of recent events involving Ms. O'Malley, we believe a professional medical analysis is warranted related to fitness for duty."

84.     The March Letter advised Dr. Okonta of Plaintiff having a handicap tag and summarized what was entailed in order to obtain such a tag.

85.     In the March Letter, Geo attached Plaintiff's job description for Dr. Okonta to review.

86.     This was despite the fact that Ms. Perry-Jones already provided the job description to Dr. Okonta when she accompanied Plaintiff to the doctor appointment.

87.     Based on the information provided in the March Letter, Geo requested that Dr. Okonta assess Plaintiff's "fitness to work in the prison and prison transport environment."

88.     On or about March 19, 2018, Dr. Okonta provide a letter to Geo stating the following: "This letter is to certify that [Plaintiff] is medically stable to perform all duties listed in the job description."

89.     At the time he sent the letter to Geo, Dr. Okonta was aware of Plaintiff's disability.

90.     Dr. Okonta further invited Geo to contact him if it had any questions with regard to his letter.

91.     On or about April 3, 2018, after Geo had received the clearance letter from Dr. Okonta, Plaintiff was summoned to a meeting with Zerillo, Human Resources and the Union to discuss her situation.

92.     In this meeting, Zerillo said that Plaintiff must give up her personal handicap tag if she wanted to continue working for Geo.

11

93.     In other words, Geo believed that as of April 3, 2018, Plaintiff could perform the essential functions of her job without a reasonable accommodation.

94.     However, despite having a disability that Geo believed did not require an accommodation, it still insisted that Plaintiff give up her handicap tag in order to keep her job.

95.     Plaintiff complained to Zerillo, advising that she believed Geo was violating the law by requesting that she give up her handicap tag in order to remain employed by Geo.

96.     Plaintiff further noted that she had been working for Geo since 2009 with the handicap tag, which she was lawfully entitled to have, and had done everything that Geo had requested of her to demonstrate that she could perform the duties of her job.

97.     After the meeting, Plaintiff was sent home.

98.     Thereafter, Geo sent letters to Plaintiff discussing the purported need to engage in the interactive process about her position.

99.     These letters from Geo were provided in bad faith as the need for any type of interactive process was rendered moot by the multiple prior examinations Plaintiff passed, stating that she could work in her position as a Transportation Officer for Geo.

100.    Further evidencing the bad faith nature of these letters is the lack of any reasonable accommodation proposed by Geo to Plaintiff based on its alleged concerns when Geo had full knowledge of Plaintiff's disability.

101.    Ultimately, by letter dated June 20, 2018, Geo terminated Plaintiff's employment stating that she "failed to cooperate with the process and to provide the company with the required documents …." (the "Termination Letter").

102.    Geo had absolutely no basis to terminate Plaintiff's employment after she had done nothing but comply with Geo's requests to attend appointment after appointment establishing that she was fit for duty.

103.    When the DOT examination results – which should have been sufficient in and of themselves – and doctors of Geo's own choosing all passed Plaintiff on the tests to perform the duties of her job, Geo's inquiries should have ended there.

104.    Yet, Geo believed that it was entitled to an explanation from a layperson, i.e. Plaintiff, to explain how a person with a handicap tag could perform the functions of her job.

105.    This was not a proper question to pose to Plaintiff given that she had been performing the same job for nearly seventeen years without issue and Geo's own doctors said that she could perform her job as a Transportation Officer.

106.    At no time was any accommodation proposed by Geo to Plaintiff, such as what Geo believed was necessary for Plaintiff to continue working her job as a Transportation Officer, or even to explore transferring Plaintiff back to the office position where she succeeded in her role for about five years.

107.    On July 31, 2018, Plaintiff emailed Nicole L. Moody, Geo's Director of Human Resources, responding to the Termination Letter.

108.    In her email, Plaintiff stated the following:

> On June 25, 2020, I received a letter from the GEO Group Human Resources Director stating I failed to cooperate with the interactive process and to provide required documents.   This is a false statement.   I was informed that in order to continue my employment I must surrender my handicap plate even though I complied with all the medical they requested clearing me to continue working.
> I did not voluntarily terminated (sic) my employment in any way, my termination was the sole action of the Queens Facility and their HR Department.

> This process has not been interactive whatsoever. This has been a personal attack against my character, and after 16 years of quality service, exceptional evaluations and multiple employees of the month recognitions, the current management of the GEO Group has gone above and beyond to create a hostile work environment in their efforts to force me out of the company.

109. Geo never responded to Plaintiff's email.

## <u>COUNT ONE</u>
**(Discrimination Based on Disability in Violation of the ADA)**

110. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

111. Plaintiff's congestive heart disease/failure constitutes a disability within the meaning of the ADA.

112. Plaintiff's disability substantially limits the operation of her major bodily functions, including, but not limited to, functions of the respiratory system.

113. Plaintiff's disability substantially limits her ability to breathe.

114. Geo regarded Plaintiff as disabled because she had a handicap tag in her personal vehicle.

115. Geo had a record of Plaintiff's disability based on the examination results provided to it from Plaintiff's examining doctors.

116. Geo knew of Plaintiff's disability, regarded Plaintiff as disabled, and had a record of Plaintiff's disability.

117. Geo violated the ADA when it terminated Plaintiff's employment because of her disability, perceived disability and/or record of disability.

118. By the acts and practices described above, Geo discriminated against Plaintiff in the terms and conditions of her employment on the basis of her disability, perceived disability and/or record of disability, in violation of the ADA.

14

119.     Geo knew that their actions constituted unlawful discrimination under ADA and/or acted with malice or reckless indifference to Plaintiff's statutorily protected rights.

120.     As a result of Geo's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future compensatory damages, emotional distress, humiliation, and is entitled to other damages based on Geo's unlawful acts, including the attorneys' fees and costs incurred in prosecuting this action.

**COUNT TWO**
**(Failure to Reasonably Accommodate in Violation of the ADA)**

121.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

122.     After being deemed fit to work by multiple doctors selected by Geo, Geo sent Plaintiff letters indicating that it still wanted to engage in the interactive process with her.

123.     The letters sent to Plaintiff seeking to engage in the interactive process were provided in bad faith because Geo already knew of and/or had a record of Plaintiff's disability and Geo would not assist Plaintiff in returning to her position after she was cleared to work by Geo's selected doctors.

124.     At no time did Geo, in good faith, assist Plaintiff in seeking accommodations based on Plaintiff's known disability and/or record of her disability.

125.     Not one accommodation was offered by Geo in any of the letters it sent to Plaintiff.

126.     Instead, Geo sought to place the onus on Plaintiff for requesting a reasonable accommodation despite the doctors advising Geo that Plaintiff could perform the functions of her job as a Transportation Officer.

127.     But for Geo's bad faith, reasonable alternatives could have been explored to address any concerns Geo had about Plaintiff's disability, including, but not limited to, returning her to the

15

office position she previously held.

128.    Geo acted intentionally and with malice and/or reckless indifference to Plaintiff's federally protected rights.

129.    As a result of Geo's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT THREE
### (Retaliation in Violation of the ADA)

130.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

131.    Plaintiff participated in protected activity under the ADA by, among other things, complaining to Geo that she believed it was illegal for it to require Plaintiff to give up her handicap tag to Geo in order to remain employed in April 2018.

132.    Geo unlawfully retaliated against Plaintiff in violation of the ADA by terminating her employment in June 2018, mere months after she refused to give up her handicap tag.

133.    Geo acted intentionally and with malice and/or reckless indifference to Plaintiff's federally protected rights.

134.    As a result of Geo's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT FOUR
### (Discrimination Based on Disability in Violation of the NYSHRL)

135.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

136.    Plaintiff's congestive heart disease/failure is a medical and/or physical impairment

16

that constitutes a disability within the meaning of the NYSHRL

137.    Geo knew of Plaintiff's disability, regarded Plaintiff as disabled, and had a record of Plaintiff's disability.

138.    Geo violated the NYSHRL when it terminated Plaintiff's employment because of her disability, perceived disability and/or record of disability.

139.    By the acts and practices described above, Geo discriminated against Plaintiff in the terms and conditions of her employment on the basis of her disability, perceived disability and/or record of disability, in violation of the NYSHRL.

140.    Geo knew that their actions constituted unlawful discrimination under NYSHRL and/or acted with malice or reckless indifference to Plaintiff's statutorily protected rights.

141.    As a result of Geo's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future compensatory damages, emotional distress, humiliation, and is entitled to other damages based on Geo's unlawful acts, including the attorneys' fees and costs incurred in prosecuting this action.

## <u>COUNT FIVE</u>
**(Failure to Reasonably Accommodate in Violation of the NYSHRL)**

142.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

143.    After being deemed fit to work by multiple doctors selected by Geo, Geo sent Plaintiff letters indicating that it still wanted to engage in the interactive process with her.

144.    The letters sent to Plaintiff seeking to engage in the interactive process were provided in bad faith because Geo already knew of and/or had a record of Plaintiff's disability and Geo would not assist Plaintiff in returning to her position after she was cleared to work by Geo's selected doctors.

17

145.    At no time did Geo, in good faith, assist Plaintiff in seeking accommodations based on Plaintiff's known disability and/or record of her disability.

146.    Not one accommodation was offered by Geo in any of the letters it sent to Plaintiff.

147.    Instead, Geo sought to place the onus on Plaintiff for requesting a reasonable accommodation despite the doctors advising Geo that Plaintiff could perform the functions of her job as a Transportation Officer.

148.    But for Geo's bad faith, reasonable alternatives could have been explored to address any concerns Geo had about Plaintiff's disability, including, but not limited to, returning her to the office position she previously held.

149.    Geo acted intentionally and with malice and/or reckless indifference to Plaintiff's federally protected rights.

150.    As a result of Geo's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

**COUNT SIX**
**(Retaliation in Violation of the NYSHRL)**

151.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

152.    Plaintiff participated in protected activity under the NYSHRL by, among other things, complaining to Geo that she believed it was illegal for it to require Plaintiff to give up her handicap tag to Geo in order to remain employed in April 2018.

153.    Geo unlawfully retaliated against Plaintiff in violation of the NYSHRL by terminating her employment in June 2018, mere months after she refused to give up her handicap

18

tag.

154.    Geo acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

155.    As a result of Geo's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

<u>**COUNT SEVEN**</u>
**(Discrimination Based on Disability in Violation of the NYCHRL)**

156.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

157.    Plaintiff's congestive heart disease/failure is a medical and/or physical impairment that constitutes a disability within the meaning of the NYCHRL

158.    Geo knew of Plaintiff's disability, regarded Plaintiff as disabled, and had a record of Plaintiff's disability.

159.    Geo violated the NYCHRL when it terminated Plaintiff's employment because of her disability, perceived disability and/or record of disability.

160.    By the acts and practices described above, Geo discriminated against Plaintiff in the terms and conditions of her employment on the basis of her disability, perceived disability and/or record of disability, in violation of the NYCHRL.

161.    Geo knew that their actions constituted unlawful discrimination under NYCHRL and/or acted with malice or reckless indifference to Plaintiff's statutorily protected rights.

162.    As a result of Geo's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future compensatory damages, emotional distress, humiliation, and is entitled to other damages based on Geo's unlawful acts, including the attorneys' fees and costs

19

incurred in prosecuting this action.

## COUNT EIGHT
### (Failure to Reasonably Accommodate in Violation of the NYCHRL)

163.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

164.    After being deemed fit to work by multiple doctors selected by Geo, Geo sent Plaintiff letters indicating that it still wanted to engage in the interactive process with her.

165.    The letters sent to Plaintiff seeking to engage in the interactive process were provided in bad faith because Geo already knew of and/or had a record of Plaintiff's disability and Geo would not assist Plaintiff in returning to her position after she was cleared to work by Geo's selected doctors.

166.    At no time did Geo, in good faith, assist Plaintiff in seeking accommodations based on Plaintiff's known disability and/or record of her disability.

167.    Not one accommodation was offered by Geo in any of the letters it sent to Plaintiff.

168.    Instead, Geo sought to place the onus on Plaintiff for requesting a reasonable accommodation despite the doctors advising Geo that Plaintiff could perform the functions of her job as a Transportation Officer.

169.    But for Geo's bad faith, reasonable alternatives could have been explored to address any concerns Geo had about Plaintiff's disability, including, but not limited to, returning her to the office position she previously held.

170.    Geo acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

## COUNT NINE
### (Retaliation in Violation of the NYCHRL)

171.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

20

172.     Plaintiff participated in protected activity under the ADA by, among other things, complaining to Geo that she believed it was illegal for it to require Plaintiff to give up her handicap tag to Geo in order to remain employed in April 2018.

173.     Geo unlawfully retaliated against Plaintiff in violation of the NYCHRL by terminating her employment in June 2018, mere months after she refused to give up her handicap tag.

174.     Geo acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

175.     As a result of Geo's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT TEN
### (Aiding and Abetting Disability Discrimination in Violation of the NYSHRL)

176.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

177.     As a result of the aforementioned actions, the Individual Defendants discriminated against Plaintiff on account of her disability, perceived disability and/or records of disability with respect to the terms, conditions and privileges of her employment in violation of the NYSHRL.

178.     The Individual Defendants violated the NYSHRL by aiding, abetting, inciting and coercing the unlawful discrimination set forth in this Complaint.

179.     The Individual Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

180.     As a result of the Individual Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future

physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT ELEVEN
### (Aiding and Abetting Disability Discrimination in Violation of the NYCHRL)

181.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

182.    As a result of the aforementioned actions, the Individual Defendants discriminated against Plaintiff on account of her disabilities, perceived disabilities and/or record of disabilities with respect to the terms, conditions and privileges of her employment in violation of the NYCHRL.

183.    The Individual Defendants violated the NYCHRL by aiding, abetting, inciting and coercing the unlawful discrimination set forth in this Complaint.

184.    The Individual Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

185.    As a result of the Individual Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court accept jurisdiction over this matter and award her:

(a)      Appropriate injunctive relief, including an order restraining Defendants from

22

engaging in further discriminatory and retaliatory conduct asserted herein and, in lieu of reinstatement, award her front pay (including benefits);

(b)     Back pay, wages and other lost prerequisite and benefits in an amount to be determined at trial;

(c)     Compensatory damages including damages for emotional distress, humiliation and pain and suffering;

(d)     Pre-judgment and post-judgement interest;

(e)     Reasonable attorneys' fees and costs incurred in the prosecution of this action;

(f)     Punitive damages for Defendants' malicious, willful and/or reckless disregard for Plaintiff's statutory rights; and

(g)     Such other legal and equitable relief as may appear to this Court to be just and proper.

Dated: February 11, 2021
        Ronkonkoma, New York

                                Respectfully submitted,
                                **CAMPOLO, MIDDLETON**
                                **& McCORMICK, LLP**


                                */s/ Yale Pollack*_____
                                        Yale Pollack, Esq.
                                *Attorneys for Plaintiff*
                                4175 Veterans Memorial Hwy., Ste. 400
                                Ronkonkoma, New York 11779
                                (631) 738-9100

[3723-001/3460313]

# EXHIBIT "1"

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Carmen O'Malley**<br>**13030 Lefferts Blvd.**<br>**South Ozone Park, NY 11420** | From: | **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

| | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2019-02739** | **Holly M. Shabazz,**<br>**State & Local Program Manager** | **(929) 506-5316** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other *(briefly state)*     **Charging Party wishes to pursue matter in Federal District Court.**

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*(signature)*                                                              January 4, 2021

Enclosures(s)

**Judy A. Keenan,**
**District Director**

*(Date Mailed)*

cc:    **Attn: Director of Personnel**
**THE GEO GROUP, INC.**
**One Park Place, 621 Northwest**
**53rd Street, Suite 700**
**Boca Raton, FL 33487**

**Yale Pollack, Esq.**

**Jacqueline Phipps Polito, Esq.**